UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

WARREN GRANT,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )        No.:  3:08-CV-350
                                       )                (VARLAN/SHIRLEY)
THE SHAW GROUP, INC. and               )
SHAW ENVIRONMENTAL, INC.,              )
                                       )
            Defendants.                )

## MEMORANDUM OPINION

This civil action came before the Court for a bench trial on August 22, 2011.  The

plaintiff, Warren Grant, seeks compensation under the Fair Labor Standards Act, 29 U.S.C.

§§ 201, *et seq.* (the "FLSA"), for overtime he performed as an exempt "Scientist 4" for

defendants, The Shaw Group, Inc. (the "Shaw Group") and Shaw Environmental, Inc.

("Shaw Environmental").  The parties have submitted post-trial briefs, along with proposed

findings of fact and conclusions of law [Docs. 56, 62, 78, 79. 80].  The following are the

Court's findings of fact and conclusions of law as required by Federal Rule of Civil

Procedure 52(a).

## I.      Post-Trial Motions

The Court will first address defendants' two post-trial motions, brought pursuant to

Federal Rule of Civil Procedure 50, and made orally at the close of proof following the bench

trial.

First, defendants move the Court for a directed verdict in favor of the Shaw Group on grounds that plaintiff has not met his burden of proving that the Shaw Group was his employer and that it violated the FLSA. Second, defendants move the Court for a directed verdict on grounds of the applicability of the fluctuating workweek method of compensation to this case. Plaintiff opposes both motions and argues that Rule 50 is an inappropriate vehicle in which to seek judgment as a matter of law in a bench trial. After hearing argument on the issues, the Court expressed doubt as to whether a Rule 50 motion could be made under these circumstances. Nevertheless, the Court took defendants' Rule 50 motions under advisement, indicating that the parties should argue, in post-trial briefs, the applicability of said motions and the parties' positions for and against the relief sought in the motions.

Now, having been presented with the parties' post-trial briefs and given time to fully consider and research the issues, the Court concludes that defendants' motions are not cognizable under Rule 50, as that rule pertains to when "a party has been fully heard on an issue during a jury trial[,]" and not a bench trial. Fed. R. Civ. P. 50(1)(1). Thus, Rule 50(a), by its express terms, applies only in a jury trial. *Id.* Accordingly, the Court will **DENY** defendants' Rule 50 motions because these motions do not apply under the circumstances of this case.

However, under the circumstances presented, the Court concludes that defendants could have made a motion for judgment on partial findings under Federal Rule of Civil Procedure 52(c). That Rule states that:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c). Accordingly, the Court will **CONSTRUE** defendants' motions as motions for judgment on partial findings pursuant to Rule 52(c).

The express terms of Rule 52(c), and the case law applying, it reflect that the Court has the discretion to decline to render its ruling on a Rule 52(c) motion until the close of all the evidence. *See id. See also Int'l Union of Operating Engineers v. Indiana Const. Corp.*, 13 F.3d 253, 257 (7th Cir. 1994) (stating that it is within the sound discretion of the trial court to decline to render judgment until hearing all of the evidence); *Payne ex el Estate of Payne v. Equicredit Cor. of America*, 71 F. App'x 131, 133, 2003 WL 21783757 (3rd Cir. 2003); *Celevenger v. Dillard's Dept. Stores, Inc.*, No. 1:02-cv-558, 2007 WL 4248207 (S.D. Ohio. Nov. 30, 2007). Thus, using this discretion, the Court will **DENY** defendants' Rule 52(c) motions. The Court concludes that the better course is for the Court to render its rulings after the close of all of the evidence, after due consideration of the evidence, testimony, and the applicable law, and after the parties' post-trial submissions.

Such rulings are given herein.

3

## II. Findings of Fact[1]

1. Plaintiff is a high school graduate who has taken three community college courses but has not obtained a higher degree [Doc. 74, pp. 29-30].

2. Plaintiff's past employment includes jobs as a typist/clerk, a ceramic technician, an assistant restaurant manager, a jewelry store manager, a food production line mechanic, an electrical contractor, an instrument tech, and a grain dryer servicer [*Id.*, pp. 30-34; Pl.'s Ex. 4, pp, 88-89].

3. Between 2003 and the beginning of 2006, plaintiff was employed by Environmental Systems Corporation ("ESC") as a CEM Technologist II (a "CEM tech") [Doc. 74, pp. 57-58; Pl.'s Ex. 4, pp. 53, 88].

4. As a CEM tech, plaintiff's duties included: working on continuing emissions monitoring systems ("CEM systems"); monitoring and testing emissions; considering and determining appropriate actions based on the results of emission tests; evaluating customers' sites and determining what type of CEM system or equipment needed to be installed; installing new equipment and CEM systems; and performing preventative and ongoing maintenance on existing CEM systems [Doc. 74, pp. 43-46; Pl.'s Ex. 4]. Plaintiff also performed tests on CEM systems to determine if the systems were in compliance with regulations, including checking data, entering data into spreadsheets, and running data through formulas [Doc. 74, pp. 47-50, 61-65, 130-

---

[1]The Court makes only the findings of fact necessary to reach its conclusions of law.

32; Pl.'s Ex. 4]. Plaintiff considered the results of these tests and advised customers about what must be done to bring their systems into compliance [Doc. 74, pp. 47-50, 61-65, 130-32 ; Pl.'s Ex. 4]. If a test showed that a CEM system was not in compliance, plaintiff would work on the system, including looking for mechanical failures and rebuilding system components [Doc. 74, pp. 130-32].

5.    As a CEM tech, plaintiff did not perform engineering duties and did not build or design CEM systems [*Id.*, pp. 38-49, 53-55].

6.    In January 2006, Shaw Environmental purchased and acquired the assets of ESC [Defs.' Ex. 8a, p. 8].

7.    In January 2005, Marty Kunz ("Kunz") was hired by the Shaw Group as regional human resources director [*Id.*, p. 5].

8.    In January 2006, Kunz was promoted to divisional senior director of human resources for Shaw Environmental, a position Kunz held until February 2007 [*Id.*, pp. 5-6].

9.    Kunz has approximately eighteen years experience in human resources, including being a director, senior director, and vice president of human resources at several different companies [*Id.*, pp. 4-7].

10.   Kunz claims to have a working knowledge of the FLSA and to be familiar with its regulations [*Id.*, p. 7]. Kunz claims to have taken classes on human resources and employment law during his undergraduate education, his post-graduate studies, and in continuing education seminars and workshops [*Id.*, p. 4].

11. While Kunz does not recall taking a class specifically about the FLSA, he claims that the classes and seminars he took provided information about the FLSA and its regulations [*Id.*, p. 34].

12. As part of his duties as a human resources professional, Kunz claims that he classified and reclassified employees as exempt or nonexempt on "a pretty regular basis" [*Id.*, pp. 6-7].

13. Kunz claims to have classified employees as exempt or nonexempt about fifty times [*Id.*].

14. The general process Kunz follows in classifying employees for purposes of the FLSA is to look at the job description and duties of the employee, compare that information with Department of Labor regulations for the FLSA, and, based on that comparison, make a determination as to whether the employee's position is exempt or nonexempt [*Id.*, pp. 7-8].

15. In some, but not all of his classification decisions, Kunz claims that he considers the employee's educational background [*Id.*].

16. After Shaw Environmental acquired the assets of ESC, it was Kunz's job to investigate, for FLSA purposes, the positions Shaw Environmental needed to fill [*Id.*, pp. 8-9].

17. In making these classification decisions, Kunz claims that he obtained and considered a list of employees, their job titles, and job descriptions [*Id.*, p. 9].

18. Kunz claims he also obtained information about the employees' job descriptions and duties from the employees' supervisors and ESC's director of human resources [*Id.*].

19. Kunz specifically recalls interviewing plaintiff's former supervisors at ESC [*Id.*, p. 10].

20. Kunz claims that ESC's director of human resources gave him information about the employees' positions, their job descriptions, and their benefits, salaries, and compensation histories [*Id.*, pp. 16-17].

21. Kunz claims he also obtained information about the employees' positions and job descriptions from Tracy Sender ("Sender"), Shaw Environmental's operations manager, who he claims has experience classifying employees in scientist and technician positions [*Id.*, pp. 15-16].

22. Kunz claims he attempted to personally interview the employees whose positions he was classifying [*Id.*, pp. 9-10].

23. Kunz did not recall meeting with or interviewing plaintiff [*Id.*, p. 10].

24. Based on his investigation of the nature of plaintiff's job duties with ESC, the job descriptions provided to him, and his review of the FLSA regulations, Kunz determined that plaintiff's job duties as a CEM fell within Shaw Environmental's Scientist 4 category of positions [*Id.*, pp. 11-12, 38].

25. Kunz also determined that plaintiff was exempt under the administrative and professional exemptions of the FLSA [*Id.*].

26.  Kunz based this decision on his determinations that plaintiff was self-supervised, interpreted and evaluated data, and interacted and made recommendations to clients regarding the CEM systems [*Id.*, pp. 11-12, 38].

27.  Shaw Environmental extended an oral offer of employment to plaintiff to perform a similar job to the job plaintiff had performed for ESC [Doc. 74, p. 73; Pl.'s Ex. 4, pp. 53, 108].

28.  On January 10, 2006, a letter was sent to plaintiff confirming Shaw Environmental's verbal offer to plaintiff for the position of Scientist 4 [Doc. 74, p. 73; Pl.'s Ex. 4, p. 108].

29.  The letter stated that Shaw Environmental agreed to pay plaintiff a monthly salary of $4,187.50 [Doc. 74, p. 73; Pl.'s Ex. 4, p. 108].

30.  On or about January 16, 2006, plaintiff began his employment as a Scientist 4 [Doc. 74, pp. 73-75; Pl.'s Ex. 4, p. 108].

31.  Plaintiff claims that when he accepted Shaw Environmental's offer, he believed he would be paid $4,187.50 a month in salary on the condition that he work forty hours per week [Doc. 74, pp. 73-74].

32.  Plaintiff claims that when he accepted Shaw Environmental's offer, he assumed that if he worked more than forty hours a week, he would be paid more [*Id.*].

33.  Plaintiff claims he did not know whether Shaw Environmental paid him overtime [*Id.*].

8

34. Plaintiff claims that he recalls sometimes working more than sixty or seventy hours a week but does not recall working less than forty hours a week [*Id.*, p.138].

35. Plaintiff claims that during his employment with Shaw Environmental, he did not understand that he would receive a salary for all hours he worked, regardless of the number of hours he actually worked [*Id.*, p. 112].

36. As a Scientist 4 with Shaw Environmental, plaintiff claims he was not paid overtime at a rate of time-and-a-half [*Id.*, pp. 74-75].

37. Plaintiff claims he performed essentially the same duties as a Scientist 4 that he performed as a CEM tech [*Id.*, p. 58].

38. As a Scientist 4, plaintiff's job duties included the following: collecting data; ensuring conformance to technical standards and company policies and procedures; reviewing the history of analyzers and looking at past recorded data; running tests; determining how to proceed once he was on a job; sharing his expertise; applying his skills to particular situations; and informing other departments if problems arose or if additional work was needed [*Id.*, pp. 79-87]. If a CEM system was not working properly, plaintiff testified that he "would . . . go back and look at the history of the analyzer and see . . . what it had been doing and try to identify what the problem was, was [sic] it drift, is it a problem of the analyzer or do we have a problem with the gas. Go from, you know, go from there, try to identify where the problem started and what is causing it." [*Id.*, pp. 86-87]. Plaintiff also performed preventative maintenance such as running tests to determine whether vacuum pumps were working properly,

9

rebuilding broken vacuum pumps, and determining whether a line was plugged [*Id.*, pp. 87-90].

39. Plaintiff claims he learned how to do these duties through on-the-job training and by reviewing manuals [*Id.*, pp. 38-49, 53-55].

40. Plaintiff claims that the duties Shaw Environmental lists under its job description for a Scientist 4 bare little resemblance to the duties he actually performed [Pl.'s Ex. No. 11].

41. On March 9, 2006, John Tsouris ("Tsouris"), a co-worker of plaintiff's who performed a similar job for Shaw Environmental, sent an email to Bob Howard ("Howard"), a member of Shaw Environmental's management [Defs' Ex. 8a, pp. 20-21; Pl.'s Ex. 1].

42. Tsouris advised Howard that he disagreed with his exempt status, stating, in part, that:

> It has come to my understanding that some members of the field service group have been classified as scientists, and others as field service personnel. Apparently, the only real difference is that field service technicians receive time-and-a-half for overtime hours and scientists only receive straight time.
>
> I have been classified as a scientist. No matter which way you slice it, I am not doing scientific experiments when hauling myself up the sides of these stacks. Nor am I doing work which is intellectual in character. I do, however, do a lot of field service technical work using my hands.

[Pl.'s Ex. 1].

43.	Also in the email is an excerpt from what Tsouris claims are the FLSA regulations for "Blue Collar Workers"—that FLSA exemptions are not intended to apply to workers who perform blue collar-type employment [Pl.'s Ex. 1].

44.	In a different email sent the same day, plaintiff adopted the contents of Tsouris' email and echoed Tsouris' concerns regarding exempt status (the "March 9 complaint") [*Id.*].

45.	Upon receiving notice of plaintiff's March 9 complaint, Kunz claims he re-evaluated plaintiff's exempt classification [Defs' Ex. 8a, pp. 21-22].

46.	In re-evaluating plaintiff's classification, Kunz claims he re-reviewed the job description of a Scientist 4, re-reviewed plaintiff's duties, and re-reviewed Department of Labor FLSA regulations [*Id.*, pp. 21-22].

47.	As a result of his re-evaluation, Kunz reached the same decision, that plaintiff was classified as a Scientist 4, and that he was exempt under the FLSA [*Id.*, p. 21].

48.	Around July 19, 2007, plaintiff was laid off from Shaw Environmental [Pl.'s Ex. 4, p. 69].

49.	Approximately six weeks later, plaintiff was rehired by Shaw Environmental as an Engineering Technician 3, a position for which he was paid overtime at a rate of time-and-a-half [Doc. 74, pp. 104, 108].

**II.     Conclusions of Law**

    **A.     Liability**

1.    Congress enacted the FLSA "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work[.]" *Acs v. Detroit Edison Co.*, 444 F.3d 763, 764 (6th Cir. 2006) (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948)). Generally, employers subject to the FLSA must pay non-exempt employees time-and-a-half for work performed in excess of forty hours per week. 29 U.S.C. § 207(a); *Acs*, 444 F.3d at 764-65. In an action to recover unpaid overtime compensation under the FLSA, the burden rests on the plaintiff to prove, by a preponderance of the evidence, that (1) there exists an employer-employee relationship; (2) there was an engagement in activities within the coverage of the FLSA; and (3) the defendant failed to pay the plaintiff the overtime pay required by law. *See Kowalski v. Kowalski Heat Treating Co.*, 920 F. Supp. 799, 806 (N.D. Ohio. 1996). Once the plaintiff has made a prima facie case, the burden shifts to the employer to show, by a preponderance of the evidence, that one of the exemptions afforded by § 213 of the FLSA applies to the employment in question. *See id.*; 29 U.S.C. §§ 201, *et seq.*

2.    Defendants move that plaintiff's claims against the Shaw Group be dismissed as a matter of law because he has presented no evidence that the Shaw Group was his employer or was involved in the decision to classify him. In response, plaintiff argues

that there is clear evidence that the Shaw Group was his employer and that it violated the FLSA because it issued his payroll register [*see* Pl.'s Ex. 3].

3.  After considering the evidence and testimony, the Court concludes that plaintiff has failed to show, by a preponderance of the evidence, that the Shaw Group was his employer for purposes of liability under the FLSA.

4.  On his resume, plaintiff listed only Shaw Environmental as his employer, not the Shaw Group [Pl.'s Ex. 4, p. 53]. Plaintiff's offer of employment letter states that it is a confirmation of a "verbal offer for employment" from Shaw Environmental, not the Shaw Group [*Id.*, p. 108]. Kunz, who made the decision to classify plaintiff as exempt, was an employee of Shaw Environmental, not the Shaw Group, when he classified plaintiff [Defs.' Ex. 8a, pp. 5-6]. There is no evidence or testimony that the Shaw Group, or an individual employed by or with the Shaw Group, had anything to do with plaintiff's employment, or was involved in the classification decision. Last, the listing of the Shaw Group at the top of plaintiff's payroll records, without more, does not demonstrate that the Shaw Group was plaintiff's employer for purposes of the FLSA, particularly when the payroll records also list Shaw Environmental as plaintiff's "Company." [Pl.'s Ex. 3; Pl.'s Ex. 4 p. 108].

5.  Accordingly, because the Shaw Group was not plaintiff's employer for purposes of the FLSA, plaintiff's claims against the Shaw Group will be **DISMISSED** as a matter of law.

6.    The evidence and testimony presented at trial does, however, demonstrate that an employer-employee relationship existed between Shaw Environmental and plaintiff, that there was an engagement in activities covered by the FLSA, and that Shaw Environmental did not pay plaintiff overtime pay during the relevant time period. This satisfies plaintiff's burden of proving a prima facie case under the FLSA as to Shaw Environmental.

7.    It is therefore Shaw Environmental's burden to prove, by a preponderance of the evidence, that one of the exemptions afforded under § 213 of the FLSA applies to plaintiff's employment.

   **B.    Exemptions**

8.    Exceptions to the minimum wage requirement are enumerated under § 213(a) of the FLSA. For example, bona fide executive, administrative, or professional employees are exempt from the overtime pay requirement. *Acs*, 444 F.3d at 765 (citing *Auer v. Robbins*, 519 U.S. 452, 454 (1997)). These exemptions are to be narrowly construed against the employer who asserts them, *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960), and the employer bears the burden of proving that an exemption applies. *Walling v. Gen. Indus. Co.*, 330 U.S. 545, 548 (1947); *Mich. Ass'n of Governmental Employees v. Mich. Dept. of Corr.*, 992 F.2d 82, 83 (6th Cir. 1993). The application of an exemption is limited to those circumstances plainly and unmistakenly within the exemption's terms and spirit. *Arnold*, 361 U.S. at 392; *Martin v. In. Mich. Power Co.*,

14

381 F.3d 574, 578 (6th Cir. 2004); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).

9.    Kunz classified plaintiff "as exempt under the administrative and professional exemptions, based on Plaintiff's self-supervision, his collection, interpretation and evaluation of scientific data based on his knowledge and skill, and his interaction with and recommendations to clients on matters directly related to the operation of the client's business" [Doc. 78, p. 2].

### 1.    Administrative Exemption

10.   The general rule for administrative employees appears in § 541.200.  Under that section, an employee may qualify for the administrative exemption provided: (1) he or she is paid at a rate of not less than $455.00 per week; (2) the employee's primary duties must consist of office or non-manual work directly related to the defendant's management or general business operations; and (3) the employee's position requires the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200.

11.   The Court concludes that defendants have failed to meet their burden of proving that the FLSA's administrative exemption applies to plaintiff.

12.   As to the first requirement, the Court finds that plaintiff, who was paid a salary of $4,187.50 a month [Doc. 74, p. 73; Pl.'s Ex. 4, p. 108], was paid in excess of the threshold salary requirement.  As to the second requirement, no evidence or testimony demonstrated that plaintiff's primary duties as either a CEM tech or a Scientist 4

15

consisted of office or non-manual work directly related to management.[2] Rather, the evidence and testimony demonstrated that plaintiff's job duties involved primarily maintenance, testing, and physical installation of CEM systems [Doc. 74, pp. 43-46, 61-65, 79-87, 130-32; Pl.'s Ex. 4, p. 53]. As to the third requirement, while the evidence and testimony showed that plaintiff exercised some discretion, it did not demonstrate that this discretion related to matters of significance for purposes of the administrative exemption. For instance, plaintiff's discretion and judgment pertained to deciding what to do upon arriving at a customer's site; deciding what steps to take in regard to the data he obtained from CEM systems; determining whether CEM systems were in compliance with regulations by performing diagnostic tests; and determining whether he could fix problems with the CEM systems or whether others should be notified [Doc. 74, pp. 43-46, 61-65, 79-87, 130-32; Pl.'s Ex. 4, p. 53].

### 2. Professional Exemption

13. The minimum salary requirement of $455.00 per week also applies to the professional exemption. 29 C.F.R. § 541.300(a)(1). The term "employee employed in a bona fide professional capacity" in § 13(a)(1) of the FLSA is defined as any employee whose primary duty is the performance of work requiring a knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of

---

[2]In making this determination, the Court has considered plaintiff's testimony regarding his duties and responsibilities as both a CEM tech with ESC and a Scientist 4 with Shaw Environmental because plaintiff testified that his duties in each position were essentially the same.

16

specialized intellectual instruction or requiring invention, imagination, originality, or talent in a recognized field of artistic or creative behavior. 29 C.F.R. § 541.301(a).

The regulation defines "work requiring advanced knowledge" as:

> [W]ork which is predominantly intellectual in character, and which includes requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. Advanced knowledge cannot be attained at the high school level.

*Id.* § 541.301(b).

14. The Court concludes that defendants have also failed to meet their burden of showing, by a preponderance of the evidence, that the professional exemption applies to plaintiff.

15. As to the first requirement, the Court finds that plaintiff, who was paid a salary of $4,187.50 a month [Doc. 74, p. 73; Pl.'s Ex. 4, p. 108], was paid in excess of the threshold salary requirement. However, the evidence and testimony regarding plaintiff's education, his employment history, the extent of his knowledge of CEM systems, the work plaintiff performed on these systems, and his testimony regarding the nature of his duties, do not met the remaining requirements under this exemption.

16. Plaintiff is a high school graduate who has taken several community college courses but obtained no higher degree [Doc. 74, pp. 29-30]. Plaintiff's prior employment did not involve jobs requiring a knowledge of an advanced type in a field of science or

learning [*Id.*, pp. 30-34; Pl.'s Ex. 4, pp. 88-89]. Plaintiff's duties with ESC and with Shaw Environmental involved installation and maintenance work, testing data generated by CEM systems, determining whether CEM systems were in compliance with regulations, determining what steps to take to bring systems into compliance, and alerting others if there was a problem he was unable to fix [Doc. 74, pp. 47-50, 61-65, 79-87, 103-32].

17. Plaintiff was able to perform his work for both ESC and Shaw Environmental based on knowledge he accumulated through previous employment, from on-the-job experiences, from his review, consideration, and evaluation of data, and from his review of manuals and instructions [*Id.*, pp. 38-49, 53-55]. While plaintiff installed and performed maintenance on CEM systems, plaintiff did not design or build the systems [*Id.*, pp. 38-40, 42, 47, 53-55]. Apart from his review and consideration of the data generated by CEM systems, there is no evidence or testimony that plaintiff's job duties required the use of advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances [*Id.*]. Finally, while plaintiff had discretion to plan out his day-to-day work, and determine what needed to be done [*Id.*], there is no evidence that plaintiff managed or negotiated for ESC or Shaw Environmental or that he conducted business research and control.

18. Given the foregoing description of the evidence and testimony regarding the nature of plaintiff's job duties, the Court concludes that defendants have not met their burden of proving that plaintiff's work and job duties fell within the professional exemption.

18

## C. The Fluctuating Workweek Method

19. The fluctuating workweek provision, set forth in § 778.114(a), provides, in pertinent

part, that:

> An employee employed on a salaried basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight pay for whatever hours he is called upon to work in a workweek, whether few or many. **Where there is a clear and mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the [FLSA]** if the amount of the salary is sufficient to provide compensation to the employee at a rate of not less than the applicable minimum wage for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate of not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in a workweek into the amount of his salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in additional to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

29 C.F.R. § 778.114(a) (emphasis added).

20. Under § 778.114(a), it is the employer's burden to demonstrate a "clear mutual

understanding" between the parties that the fixed salary received by the plaintiff is

compensation for the hours the plaintiff worked during each workweek, whatever that

number, rather than for working forty hours or another fixed weekly work period. *See*

19

*Cowan v. Treetop Enterprises*, 163 F. Supp. 2d 930, 941 (M.D. Tenn. 2001) (citing *Roy v. Cnty. of Lexington*, 141 F.3d 533, 547 (4th Cir. 1998)). Several federal appellate courts have held that the existence of this clear mutual understanding may be "'based on the implied terms of one's employment agreement if it is clear from the employee's action that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise.'" *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 737 (S.D. Ohio 2006) (quoting *Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir. 1997) (quoting *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1281 n.21 (4th Cir. 1996))). The United States Court of Appeals for the Fourth Circuit has held that "'an employer can also demonstrate the existence of this clear mutual understanding from employment policies, practices, and procedures.'" *Id.* (quoting *Monahan*, 95 F.3d at 1275, n.12).

21.     In *Highlander v. KFC Nat'l Mgmt. Co.*, the United States Court of Appeals for the Sixth Circuit affirmed a district court's conclusion that an employee had a clear mutual understanding that her employer compensated her pursuant to a fluctuating workweek method of compensation. *Id.*, 805 F.2d 644, 645-46, 648 (6th Cir. 1986). The *Highlander* court noted that the employee had been given a form explaining the compensation system and provided with examples of how that system worked. *Id.* The *Highlander* court also noted that the employee had signed a statement acknowledging that she had received the employer's explanation on compensation, that the employee had presented no evidence at trial indicating that she had not

20

understood the compensation system, and the employee's demeanor at trial discounted from her credibility as a witness on this issue. *Id.* at 645-48.

22.     In *Mitchell v. Abercrombie & Fitch, Co.*, the district court found that the plaintiffs had a clear mutual understanding that their employer would pay them a fixed salary, regardless of the number of hours worked, because the plaintiffs knew and understood that their salary was to compensate them for straight time up to forty hours a week and knew that they would receive supplemental pay at one-half the rate of pay for hours worked each week in excess of forty. *Id.*, 428 F. Supp. 2d at 737-38. The district court rejected the plaintiffs' argument that they believed their half-time pay was a bonus, noting that there was evidence that the plaintiffs were told at the time of hiring that they would be paid half-time pay for any time over forty hours, in addition to their salary. *Id.* Also, the district court noted that at the time of hiring, the plaintiffs had each received a copy of the employee handbook, which contained information about supplemental pay, and at their orientation the plaintiffs had access to a checklist stating that they would receive straight pay, plus supplemental pay, as compensation. *Id.* Finally, the district court noted that the plaintiffs "received paychecks and paystubs throughout their employment . . . which were 'regular lesson[s] . . . about how the fluctuating workweek plan operates." *Id.* at 738 (quoting *Griffin v. Wake Cnty.*, 142 F.3d 712, 716 (4th Cir. 1998)).

23.     Defendants argue that the fluctuating workweek method applies to Shaw Environmental's compensation to plaintiff and argue that even if plaintiff was initially

21

classified incorrectly, Shaw Environmental paid plaintiff all he was owed in overtime pay. Defendants assert that plaintiff agreed to be paid a fixed salary for all hours worked, regardless of the actual number of hours he worked, and plaintiff was aware that he would receive an additional 100% of his salary rate of pay, converted to an hourly basis, for all hours worked per week in excess of forty. Defendants assert that plaintiff had a clear mutual understanding of these terms of compensation, as evidenced by his agreement and signature to Shaw Environmental's offer letter [Doc. 74, p. 138; Pl.'s Ex. 4, p. 108]. Defendants also assert that plaintiff's testimony regarding the number of hours he worked per week was inconsistent. Defendants note that plaintiff testified at his deposition that the hours he worked varied from less than forty hours a week, to as many as seventy hours a week, but that he received the same salary regardless [Doc. 74., pp. 138-39]. In contrast, at trial plaintiff testified that he did not recall ever working less than forty hours a week, and that any time he worked less than forty hours a week, these hours were for work he performed solely for clients [*Id.*]. Last, defendants argue that plaintiff's clear mutual understanding is evidenced by plaintiff's continuing to work for Shaw Environmental and his acceptance of his salary for approximately eighteen months.

24.    In response, plaintiff argues that the fluctuating workweek method cannot apply to him because he did not have a clear mutual understanding that he was to be compensated in this manner. Plaintiff asserts that the employment terms outlined in Shaw Environmental's offer letter do not establish his clear mutual understanding.

22

He argues that his March 9 complaint, three months after he accepted employment with Shaw Environmental, weighs against any finding that he had a clear mutual understanding [*Id.*, p. 98; Pl.'s Ex. 1]. He also disagrees that his testimony was inconsistent. Rather, he asserts that his testimony demonstrates that he had no expectation that he could work fewer than forty hours a week and be paid the same salary, or be paid for hours he did not work [Doc. 74, p. 78]. Last, plaintiff submits that Kunz testified that he did not know whether plaintiff was paid based on the fluctuating workweek method, and that this weighs against any finding of a clear mutual understanding [Defs.' Ex. 8a, pp. 87-90].

25. The Court concludes that defendants have not met their burden of demonstrating a clear mutual understanding between the parties that plaintiff was to be paid a fixed weekly salary regardless of the number of hours he worked per week.

26. While plaintiff's inconsistent testimony regarding the number of hours he worked per week detracts from plaintiff's credibility, the Court does not find the evidence presented by defendants to demonstrate the required clear mutual understanding and does not find that it is clear from plaintiff's actions that he understood the fluctuating workweek method to be Shaw Environmental's method of compensation. Shaw Environmental's offer of employment letter, signed by plaintiff on January 10, 2006, states only that "[y]our monthly salary will be $4,187.5." [Pl.'s Ex. 4, p. 108]. The letter contains no additional details regarding the specifics of plaintiff's employment, the hours plaintiff could work or was required to work to obtain that salary, or any

23

information regarding Shaw Environmental's overtime pay policies [*Id.*]. Plaintiff's questioning of his exempt status in the March 9 complaint only three months after he accepted employment with Shaw Environmental is also evidence that weighs against a clear mutual understanding [Pl.'s Ex. 1]. In addition, Kunz, who testified that he has extensive knowledge of issues arising under the FLSA, was unclear as to whether plaintiff was compensated pursuant to such a method [Defs.' Ex. 8a, pp. 87-90]. Finally, the evidence identified in *Highlander* and *Mitchell* supporting the employees' clear mutual understandings, including knowledge of employment practices, access to employee handbooks describing compensation schemes, and receipt at the time of hiring of information regarding such schemes and compensation plans, is not present in this case.

27. In sum, the Court concludes that defendants have not met their burden of demonstrating the applicability of the fluctuating workweek method of compensation.

### D.     Classification Decision Made With Good Faith and Reasonable Grounds

28. The FLSA states that "[a]ny employer who violates . . . [29 U.S.C. § 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount as liquidated damages." 29 U.S.C. § 216(b). The Court has discretion to limit or deny an award of liquidated damages if the employer shows that it acted in good faith and with reasonable grounds for believing that its act or omission was not a violation of the FLSA. 29 U.S.C. § 260; *see Elwell v. Univ. Hosp.*

24

*Home Care Serv.*, 276 F.3d 832, 840 (6th Cir. 2002). The employer bears a "substantial" burden to demonstrate its good faith and that it had reasonable grounds for its incorrect classification of a plaintiff. *See Elwell*, 276 F.3d at 840. In particular, an employer "must show that [it] took affirmative steps to ascertain the [FLSA's] requirements, but nonetheless violated its provisions." *Martin v. In. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) (internal punctuation omitted).

29. In *Elwell*, the Sixth Circuit found that the defendant, a hospital, had not met its burden of demonstrating good faith in its implementation of a compensation plan that was found to violate the FLSA. *Id.*, 276 F.3d at 841. In reaching this conclusion, the *Elwell* court noted that the defendant hospital's only witness to testify regarding the steps the defendant hospital took to implement the compensation plan was not employed by the defendant hospital at the time the plan was implemented, or even when the plaintiff was an employee. *Id.* The *Elwell* court also found that the defendant hospital had not even suggested that in implementing the compensation plan, it had relied on the expertise or opinion of any person or entity with knowledge of the FLSA regulations. *Id.*

30. In addition, one district court found a county government failed to act in good faith for purposes of the FLSA in regard to its incorrect classification of a police officer. *Lewallen v. Scott Cnty.*, 724 F. Supp. 2d 893, 899 (E.D. Tenn. 2010). The district court noted that at the time the county denied the police officer overtime pay, the county was on notice that it was in violation of the FLSA because the police officer

25

had sent material to his supervisor which laid out the applicable FLSA requirements for compensating police officers who performed the same job. *Id.* While the police officer's supervisor had presented the materials to the county's finance department and other decision-makers, the county had done nothing to reclassify the police officer, even when presented with information that its classification was incorrect. *Id.* The *Lewallen* court found this failure to act when on notice of a possible FLSA violation constituted bad faith. *Id.*

31. In contrast, in *Macklin v. Delta Metals Co.*, a district court found the defendant employer had demonstrated good faith when it put forth evidence that it had taken affirmative steps to ascertain the requirements of the FLSA, yet still violated its provisions. *Id.*, No. 2:08-cv-02667, 2011 WL 11417, at *9-*10 (W.D. Tenn. Jan. 4, 2011). The *Macklin* court found evidence of the employer's good faith by the attendance of the defendant's personnel manager at a seminar on how to classify employees under the FLSA, the personnel manager's review of the exempt or nonexempt status of other employees who were similar to the plaintiff, and the personnel manager's testimony that he believed part of the reason for the plaintiff's incorrect classification was due to a breakdown in communications between the payroll clerk and the human resources department. *Id.*

32. Defendants assert that Shaw Environmental acted in good faith and with reasonable grounds, demonstrated by Kunz's testimony regarding the affirmative steps he took to ascertain plaintiff's duties, the applicable FLSA regulations, and to classify

26

plaintiff based on those regulations. Defendants point to Kunz's testimony that he attended informational seminars and continuing education classes which provided information about the FLSA and its regulations, his professed knowledge and on-the-job training in human resource and employment law matters, and his classification of over fifty employees for purposes of the FLSA [Defs.' Ex. 8a, pp. 4-8]. Similar to the steps taken by the personnel manager in *Macklin*, defendants submit that Kunz interviewed plaintiff's supervisors at ESC and ESC's human resources director, that he investigated and determined what plaintiff's job duties as a CEM tech had been and what plaintiff's job duties would be with Shaw Environmental, that he reviewed plaintiff's job description and discussed that description with a Shaw Environmental veteran who had experience classifying scientist positions, and that he considered all of this information in conjunction with Department of Labor regulations for the FLSA [*Id.*, pp. 14-16]. Defendants also submit that after he became aware of plaintiff's March 9 complaint, Kunz demonstrated a good faith effort to ascertain whether Shaw Environmental's classification of plaintiff violated the FLSA by reinvestigating and reevaluating plaintiff's position, his duties, and the FLSA regulations.

33. Similar to what occurred in *Lewallen*, plaintiff argues that defendants were on notice of verbal and written complaints he made to Shaw Environmental's management regarding his exempt status, yet failed to act. Plaintiff argues that defendants produced no evidence, beyond Kunz's testimony, concerning the steps taken or the classification decision, that Kunz could not have made a real effort to ascertain

27

plaintiff's job duties because plaintiff's testimony demonstrated that the job description for a Scientist 4 upon which Kunz relied had little to do with plaintiff's actual duties, and because defendants failed to obtain a legal opinion regarding plaintiff's exempt status.

34.    The Court concludes that defendants have met their burden of proving that Shaw Environmental acted in good faith and with reasonable grounds for believing that its actions in classifying plaintiff were in compliance with the FLSA.

35.    The Court finds that the affirmative steps taken by Kunz, namely, his investigation into the nature of plaintiff's duties with ESC and the nature of plaintiff's duties with Shaw Environmental, and his comparison of those duties to the FLSA regulations, are the type of good faith conduct required by the FLSA.  These steps also included discussing plaintiff's duties with his former supervisors and former human resources manager, discussing the nature of plaintiff's job with a veteran employee of Shaw Environmental, reviewing the job descriptions, comparing this information to the FLSA regulations, and making a determination based on that comparison.

36.    As to whether Shaw Environmental was on notice that plaintiff was incorrectly classified and failed to do anything to address this incorrect classification, the Court concludes that the evidence and testimony presented at trial does not show notice followed by a failure to act.  Unlike in *Lewallen*, once Kunz was on notice of plaintiff's March 9 complaint, he took affirmative steps, similar to those he took during his initial investigation and evaluation of plaintiff, to re-investigate and re-

28

evaluate plaintiff and his job duties. The Court finds this conduct demonstrates good faith. In addition, while plaintiff testified at trial that he complained three or four times to three or four different individuals in Shaw Environmental's management regarding his exempt status [Doc. 74, p. 133], as pointed out at trial and in defendants' post-trial brief, this testimony is inconsistent with plaintiff's deposition testimony, during which he testified that he spoke on one occasion with one individual about his exempt status, that the conversation was not "in depth," and that plaintiff dropped the issue [*Id.*, p. 136]. Given these inconsistencies and Kunz's unequivocal testimony regarding the steps he took to re-investigate and re-evaluate plaintiff after he had notice of the March 9 complaint, the Court concludes that plaintiff's testimony about his multiple complaints carries little weight.

37. As to the disconnect between plaintiff's actual duties and the duties listed for a Scientist 4, the Court does not find this to be evidence that Shaw Environmental did not act in good faith in believing it was in compliance with the FLSA. As noted by the Sixth Circuit in *Elwell*, a focus of the good faith inquiry is on the affirmative steps the employer took to ascertain the FLSA's requirements, even if the employer was found to have ultimately violated those same requirements. *See Martin*, 381 F.3d at 584. In this case, the evidence that the job description for a Scientist 4 bore little resemblance to plaintiff's actual duties goes towards the issue of Shaw Environmental's violation—that plaintiff was classified incorrectly—not the steps Shaw Environmental took or did not take in making that decision. There was no

29

testimony or evidence as to why this job description did not reflect plaintiff's actual duties, no testimony or evidence that Kunz should have known about these inconsistencies, and no testimony or evidence that Kunz knew plaintiff's duties were different. Morever, plaintiff has cited no case law stating that a personal interview with an employee is required for an FLSA classification and that the failure to do so constitutes a lack of good faith.

38. Here, similar to the investigation undertaken by the personnel manager in *Macklin*, Kunz testified that he took investigatory steps to ascertain plaintiff's classification, including interviewing supervisors, a human resource professional, reviewing job descriptions, and reviewing the FLSA regulations. *See also Cobb v. Contact Transport, Inc.*, No. 04-305-KSF, 2007 WL 1810482 (E.D. Ky. June 21, 2007) (addressing liquidated damages under the FMLA, which relies upon the same statutory framework and standard for liquidated damages as the FLSA, and finding that the employer acted in good faith because she had previous experience with the FMLA and had consulted regulations before determining whether the employee was eligible for coverage). The Court also does not find the facts of this case to be similar to those in *Elwell*, in which the employer put forth no evidence regarding the steps it took to comply with the FLSA, and did not even suggest that its compensation plan had been intended to comply with the FLSA. Furthermore, as defendants point out, the FLSA does not enumerate or detail the steps an employer must take in order to be found to have acted in good faith, and does not require an employer to seek a legal

30

opinion. *See, e.g., Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990) (noting that simply failing to seek legal advice concerning pay practice does not evidence a willful violation of the FLSA); *Cobb*, 2007 WL 1810482, at *2 (noting that the FMLA's good faith standard does not require an employer to consult an attorney).

39.    Finally, the Court concludes that Shaw Environmental's classification of plaintiff as exempt under the administrative and professional exemptions was based on reasonable grounds, given plaintiff's testimony that he considered data produced by CEM systems, evaluated that data based on tests he performed and his own experience, used his discretion to decide what steps to take based on the available data and his review of a system's record of emissions, and performed diagnostic tests to determine whether CEM systems were in compliance with regulations.

40.    Accordingly, and pursuant to § 216 of the FLSA, because the Court determines that Shaw Environmental has met its burden of proving that its conduct was in good faith, plaintiff is not entitled to an award of liquidated damages.

### E.    A Willful Violation

41.    Pursuant to § 255(a), wage claims occurring beyond two years prior to the date the complaint is filed are barred, unless the violation is found to be willful, in which case the period for commencement of suit is three years. The United States Supreme Court requires evidence that defendants displayed knowing or reckless disregard as to whether their conduct violated the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486

U.S. 128, 132-33 (1988). "[I]t is not enough to show that the employer 'acted without a reasonable basis for believing that it was complying with the statute, because willfulness requires at least recklessness. If the employer was aware of the specific FLSA requirements, for example, from prior Wage and Hour investigations, FLSA violations have been found to be willful." *Chao v. Min Fang Young*, No. 05-2563, 2007 WL 7209596, at *4 (W.D. Tenn. Aug. 13, 2007) (internal citation omitted).

42.    Defendants assert that plaintiff presented no evidence that Shaw Environmental acted willfully, knowingly, or recklessly. To demonstrate that plaintiff's complaint regarding his exempt status was not ignored, defendants point to plaintiff's inconsistent trial testimony and Kunz's testimony regarding the steps he took after having notice of the March 9 complaint. In response, plaintiff asserts that defendants exhibited reckless disregard of the requirements under the FLSA by ignoring his complaints, failing to properly investigate his job duties, and because there was evidence that management at Shaw Environmental "frowned upon" discussions of pay.

43.    As set forth above, the Court found plaintiff's testimony regarding the multiple complaints he made to management to be inconsistent with his deposition testimony, and entitled to little weight. The Court also found that the evidence and testimony demonstrated that Kunz had notice of and responded to plaintiff's March 9 complaint about his exempt status. The Court also found that there is no requirement under the FLSA that an employer obtain a legal opinion regarding classification. Finally, the

32

Court does not find plaintiff's argument that compensation discussions were "frowned upon" at Shaw Environmental to be sufficient evidence demonstrating a knowing or reckless violation of the FLSA, especially given the evidence and testimony pertaining to the steps Kunz took in making the classification decision regarding plaintiff.

44. Thus, for the same reasons the Court concluded that Shaw Environmental met its burden of demonstrating that it acted in good faith, the Court finds that Shaw Environmental did not display reckless disregard or act willfully in making an incorrect classification of plaintiff. Therefore, pursuant to § 255(a) of the FLSA, the two-year statute of limitations is applicable and plaintiff is entitled to damages within the two years prior to the date his complaint was filed. The Court next addresses the damages plaintiff should receive.

### F. Damages – Unpaid Overtime Wages, Liquidated Damages, and Attorneys' Fees and Costs

45. Plaintiff argues that he is entitled to damages for unpaid overtime wages, liquidated damages, attorneys' fees and costs. The Court examines each in turn.

46. The Court has concluded that plaintiff was classified incorrectly as an exempt employee under § 213 of the FLSA. Accordingly, pursuant to § 216 of the FLSA, plaintiff is entitled to unpaid overtime wages for the two years prior to the filing of his complaint. Plaintiff is **DIRECTED** to **SUBMIT** the appropriate amount of damages, in accordance with what is stated in this memorandum opinion, and within

**seven (7) days** of the entry of the entry of this opinion, so that the Court may then enter the appropriate judgment.

47. The Court has concluded that Shaw Environment acted in good faith and with a reasonable basis for its classification decision. Accordingly, the Court finds that plaintiff is not entitled to liquidated damages.

48. The Court concludes that plaintiff is entitled to a "reasonable attorney's fee to be paid by the defendant and costs." 29 U.S.C. § 216(b). Counsel for plaintiff is **DIRECTED** to **SUBMIT** a statement of fees and costs with supporting documentation within **thirty (30) days** of the entry of judgment.

## IV. Conclusion

Based on the Court's findings of fact and conclusions of law, **JUDGMENT** will be **ENTERED** in favor of plaintiff and against Shaw Environmental for unpaid compensation under the FLSA, 29 U.S.C. §§ 201, *et seq*, for the two years prior to the filing of plaintiff's complaint. *Id.* § 255(a). Plaintiff is not entitled to liquidated damages. *Id.* § 216. Plaintiff's claims against the Shaw Group will be **DISMISSED** as a matter of law. Defendants' post-trial Federal Rule of Civil Procedure 52(c) motions will also be **DENIED**.

An appropriate judgment order will be entered following plaintiff's submission of the appropriate amount of unpaid overtime wages.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE